WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Thomas L Kehmeier,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>United States of America,<br><br>　　　　　Defendant. | No. CV-24-03211-PHX-SHD<br><br>**ORDER** |

"As Benjamin Franklin observed, 'In this world nothing is certain but death and taxes.'" *Tilton v. Mo. Pac. R.R. Co.*, 376 U.S. 169, 180 (1964). Despite this ubiquitous adage, Plaintiff Thomas Kehmeier claims that the United States Constitution prohibits the federal government from taxing his 2023 income and that he is therefore entitled to a refund of the almost $60,000 withheld by his employer for taxes. Before the Court is the United States' (the "Government") motion to dismiss Kehmeier's First Amended Complaint ("FAC") for failure to state a claim. (Doc. 19.) The Government's motion is **granted** without leave to amend and Kehmeier will be required to show cause in writing why he should not be deemed a vexatious litigant.[1]

**I.    BACKGROUND**

This is yet another case in which Kehmeier has challenged the Government's authority to tax him. *See Kehmeier v. United States*, No. 2:10-cv-02684-NVW (D. Ariz.

---

[1] The parties did not request oral argument, so the Court decides these motions without holding a hearing. *See* LRCiv 7.2(f).

May 10, 2011) (granting motion to dismiss Kehmeier's claim for a refund and calling the claim "frivolous"); *Kehmeier v. United States*, No. 2:13-cv-02257-SRB (D. Ariz. Mar. 13, 2014) (granting motion to dismiss Kehmeier's claims and sanctioning him for bad faith).[2] This time, Kehmeier alleges that the Government "failed to timely process [his] Form 1040-X Amended U.S. Individual Income Tax Return, for the year 2023, and failed to honor [his] Claim for Refund in the amount of $57,178.00. (Doc. 18 ¶ 6.)[3] He alleges that the Sixteenth Amendment to the U.S. Constitution "cannot be interpreted as granting the Congress the power to lay and collect direct taxes on incomes, from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration." (*Id.* ¶ 13 (emphases omitted).) He claims he is entitled to a refund and brings this suit accordingly for alleged violations of the Internal Revenue Code ("IRC") and the Fifth Amendment. (*See id.* ¶¶ 23–35.) He also requests that the Court "find that the taxes imposed . . . are unconstitutional and necessarily invalid." (*Id.* at 7.)

The Government moved to dismiss Kehmeier's claims because he "alleges claims premised on tax-defier theories repeatedly rejected by courts." (*See* Doc. 19 at 1 (emphasis omitted).) The Government's motion is fully briefed. (Docs. 22 (response), 25 (reply).)

## II.   LEGAL STANDARD

The Court liberally construes *pro se* plaintiffs' pleadings. *Draper v. Rosario*, 836 F.3d 1072, 1089 (9th Cir. 2016). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true" and construed in a light most favorable to the

---

[2] Although not entirely similar, Kehmeier twice filed suit in the Court of Federal Claims requesting a refund for taxes withheld from his wages, which the court dismissed for lack of jurisdiction. *Kehmeier v. United States*, 170 Fed. Cl. 393, 394 (Fed. Cl. 2024); *Kehmeier v. United States*, 95 Fed. Cl. 442, 443–44 (Fed. Cl. 2010). Kehmeier also filed two lawsuits to enforce Freedom of Information Act ("FOIA") requests he issued to the Government to provide him with records pertaining to its taxing authority, both of which were dismissed. *See Kehmeier v. U.S. Dep't of Treasury*, No. 2:16-cv-03318-BSB (D. Ariz. June 1, 2017); *Kehmeier v. U.S. Dep't of Just. Tax Div.*, No. 2:16-cv-04257-DKD (D. Ariz. Feb. 21, 2017). Kehmeier has also filed suit against two employers, arguing that they improperly withheld taxes; these suits were likewise dismissed. *Kehmeier v. Atlas Air, Inc.*, 2021 WL 2209876, at *1 (S.D.N.Y. 2021); *Kehmeier v. World Airways, Inc.*, No. 3:08-cv-051-JTC (N.D. Ga. Sept. 15, 2008).

[3] The FAC is the operative complaint. Kehmeier previously moved to amend his complaint, which the Government did not oppose. (*See* Docs. 14, 15.)

plaintiff, "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). A claim is plausible if the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In making this determination, the Court does not accept legal conclusions as true, nor does the Court consider "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.*; *see also id.* ("Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." (alteration in original) (quotation marks omitted)). That said, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need *detailed* factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (emphasis added). A "well-pleaded complaint may proceed even if" actual proof of those facts "is improbable[] and . . . a recovery is very remote and unlikely." *Id.* at 556 (quotation marks omitted).

### III.    DISCUSSION

The Government argues that Kehmeier's claims are unclear and subject to dismissal because the "common tax-defier theories" upon which they are premised have been "repeatedly rejected by courts." (*See id.* at 1–2.) As for the IRC claim, the Government argues that Kehmeier is not entitled to a refund and that the IRS is not required to "act on a refund claim within a set timeframe, or at all"; rather, if the IRS "fails to act on the claim, the taxpayer can seek a determination on their claim by filing suit in district court," as Kehmeier did here. (*See id.* at 5–6.) As for the Fifth Amendment claims, the Government argues that his due process rights have been satisfied by the availability of a post-deprivation hearing and that taxation generally does not constitute a violation of liberty rights or a taking for purposes of the Fifth Amendment. (*Id.* at 7–11.) Finally, the Government argues Kehmeier's arguments about apportionment are frivolous. (*See id.* at 8–9.) These arguments are taken in turn.

####    A.    Conferral Requirements

Kehmeier argues that the Government did not comply with its conferral requirements under the Court's Preliminary Order. (*See* Doc. 22 at 1–2, 4–5.) The

Preliminary Order requires that before filing a Rule 12 motion, "the movant must confer with the opposing party . . . to determine whether such motion can be avoided" and attach a certificate of conferral. (*See* Doc. 10 at 2–3.) The Government met this requirement: it included a certificate of conferral with its motion, (Doc. 19 at 14), and stated that it had a telephone call with Kehmeier in which it informed him that it would move to dismiss his claims, but that they were "unable to agree that defects . . . could be cured by amendment." (*Id.*; *see also* Doc. 25 at 2 (stating that "[c]ounsel for the United States discussed [Kehmeier's claims] with [him] during two phone calls totaling approximately 90 minutes" and that Kehmeier "was unwilling to change his position or modify his arguments in such a way that would cure the challenged defect").)[4] These efforts were sufficient. *See Cox v. Glob. Tool Supply LLC*, 2020 WL 4464384, at *1 (D. Ariz. 2020) (addressing motion on the merits because, although the parties disputed whether conferral requirements were met, "they seem[ed] to agree that at least some conversation regarding [the] Motion took place before [it] was filed"). To the extent Kehmeier argues the Government was required to "offer [him] ways to cure any defects by amending the Complaint," (Doc. 22 at 4–5), he is incorrect. It is not the Government's role to advise Kehmeier on how to construct a viable complaint.

### B.  Merits

#### 1.  IRC Claim

Kehmeier's IRC claim is based on 26 U.S.C. § 6402(a), which provides that "[i]n the case of any [tax] overpayment, the Secretary . . . may credit the amount of such overpayment . . . against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall . . . refund any balance to such person." (*See* Doc. 18 ¶¶ 24–25.) According to a sworn affidavit Kehmeier sent to the IRS and attached to the FAC, Kehmeier received income from his employer, from an inheritance, and as interest on certain investments. (*See id.* at 14–16.) He claimed in this affidavit,

---

[4] One of these telephone calls occurred before Kehmeier filed the FAC. (*See* Doc. 19 at 14.) The Government indicates the conferral prompted Kehmeier to move to amend, which the Government did not oppose. (*See id.*)

however, that this income was nontaxable because it would be unconstitutional as either a capitation or direct tax or in violation of the Fifth Amendment right to liberty. (*See id.*) The FAC only disputes the taxes withheld from his employment income. (*See id.* ¶ 35; *see also* Doc. 22 at 5 (alleging that his employer "deduct[ed] and with[held] $57,178.00 as an overpayment").) He does not allege that his income or the amount of taxes imposed were calculated incorrectly. (*See id.*)

Kehmeier's claim is frivolous and will be dismissed. At bottom, Kehmeier argues that an income tax is unconstitutional. Such arguments have long been rejected by courts as frivolous. *See, e.g.*, *Moore v. United States*, 602 U.S. 572, 583 (2024) ("Because income taxes are indirect taxes, they are permitted under Article I, § 8 without apportionment. . . . Article I, § 8's grant of taxing power is exhaustive, meaning that it could never reasonably be questioned from the Founding that it included the power to lay and collect income taxes." (quotation marks omitted)); *In re Becraft*, 885 F.2d 547, 548 (9th Cir. 1989) (rejecting the argument that the a federal income tax is unconstitutional as "patent[ly] absurd[] and frivol[ous]" because, "[f]or over 75 years, the Supreme Court and the lower federal courts have both implicitly and explicitly recognized the Sixteenth Amendment's authorization of a non-apportioned direct income tax on United States citizens residing in the United States and thus the validity of the federal income tax laws as applied to such citizens"); *Grimes v. Comm'r of Internal Revenue*, 806 F.2d 1451, 1453 (9th Cir. 1986) ("There can be no doubt that the tax on income is constitutional . . . . [W]ages are income."); *Maxfield v. U.S. Postal Serv.*, 752 F.2d 433, 434 (9th Cir. 1984) ("Maxfield's assertion that he is exempt from paying income tax appears to be based solely on his allegation that the income tax is unconstitutional. This claim is frivolous."); *Gattuso v. Pecorella*, 733 F.2d 709, 710 (9th Cir. 1984) ("Taxpayers' claim that their wages are not income is frivolous."); *Edwards v. Comm'r of Internal Revenue*, 680 F.2d 1268, 1270 (9th Cir. 1982) ("To the extent that [the arguments] may be read to claim that the income tax . . . [is] unconstitutional, we summarily reject such arguments. They have been raised and rejected many times.").

Kehmeier appears to concede that this precedent—in particular, the Ninth Circuit's *Becraft* decision—forecloses his arguments. (*See* Doc. 22 at 12–13.) He argues that the Ninth Circuit's decision was "unfounded" and that the court misread Supreme Court precedent. (*Id.* at 12, 15.) District courts must follow binding Ninth Circuit precedent unless the precedent is "clearly irreconcilable" with an "intervening Supreme Court decision." *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). Kehmeier argues that *Brushaber v. Union Pacific, Railroad Co.*, 240 U.S. 1 (1916) undermines *Becraft's* holding. This decision is not *intervening* Supreme Court authority—it predates *Becraft* by 73 years. The *Becraft* court was aware of and considered the *Brushaber* decision in reaching its holding. *See Becraft*, 885 F.2d at 548 (citing *Brushaber*). That Kehmeier would have interpreted existing precedent differently than the Ninth Circuit does not render *Becraft* any less binding.

Further, although Kehmeier cites *Pollock v. Farmers' Loan & Trust Co.*, 158 U.S. 601 (1895), it is of no help. (*See* Doc. 22 at 5–6; *see also id.* at 8.) As the Supreme Court recently stated, the "*Pollock* decision sparked significant confusion and controversy throughout the United States" that culminated in the ratification of the Sixteenth Amendment, which "rejected *Pollock*'s conflation of (i) income from property and (ii) the property itself." *Moore*, 602 U.S. at 583; *see also Brushaber*, 240 U.S. at 18 ("[T]here is no escape from the conclusion that the [Sixteenth] Amendment was drawn for the purpose of doing away for the future with the principle upon which the Pollock Case was decided . . . .").

The plain text of the Sixteenth Amendment confirms that Kehmeier's argument is frivolous: it reads that Congress "shall have power to lay and collect taxes *on incomes*, from *whatever source* derived, *without apportionment* among the several States, and *without regard to any census or enumeration*." U.S. Const., amend. XVI (emphases added). Kehmeier's assertion that the Sixteenth Amendment cannot be interpreted to mean exactly what it says, (Doc. 18 ¶ 13), is tantamount to bad faith. *See, e.g.*, *Brushaber*, 240 U.S. at 17–18 ("It is *clear on the face of this text* [of the Sixteenth Amendment] that it does

not purport to confer power to levy income taxes in a generic sense,—an authority already possessed and never questioned,—or to limit and distinguish between one kind of income taxes and another, but that the whole purpose of the Amendment was to *relieve all income taxes when imposed from apportionment from a consideration of the source whence the income was derived*." (emphases added)); *id.* at 18 ("[I]n express terms the Amendment provides that income taxes, from whatever source the income may be derived, shall not be subject to the regulation of apportionment.").

Accordingly, because the IRS lawfully taxed Kehmeier's income, there was no overpayment to the Government, and the IRS did not unlawfully deny Kehmeier a refund. *See* 26 U.S.C. § 6402(a). Further, even if the IRS "ignored" his request for a refund, (Doc. 18 ¶ 25; Doc. 22 at 5–7), this does not entitle him to a refund. First, "[t]he IRS's failure to give an accurate explanation for a refund disallowance does not entitle a taxpayer to the refund on the amount claimed," and the plaintiff must ultimately show "that the [IRS's] assessment is incorrect." *Tilman v. United States*, 644 F. Supp. 2d 391, 401 (S.D.N.Y. 2009). Kehmeier has not made this showing. Second, Kehmeier's recourse is to file suit in court if he receives no response to his refund claim after six months, which Kehmeier did. 26 U.S.C. §§ 6532(a)(1), 7422(a). It follows from these two points that the IRS's failure to respond to a refund claim does not itself entitle Kehmeier to a refund. *See Wash. Mut., Inc. v. United States*, 856 F.3d 711, 721 (9th Cir. 2017) (providing that it is the taxpayer's burden to "prove not only that the [IRS] erred in [its] determination of tax liability but also to establish the correct amount of the refund due" (citation omitted)). Kehmeier's claim is thus dismissed.[5]

### 2. Fifth Amendment Claims

Kehmeier's Fifth Amendment claim for alleged violation of his right to liberty is meritless. "It is established that federal income tax withholding does not result in the violation of rights protected by the . . . Fifth Amendment[] to the Constitution." *Eagle v.*

---

[5] In his response, Kehmeier makes clear that this is only a "refund suit." (Doc. 22 at 15 (emphasis omitted).) The Government's arguments that any separate claim for restitution or damages must be dismissed for lack of subject matter jurisdiction therefore will not be addressed. (*See* Doc. 19 at 11–12.)

*Kenai Peninsula Borough*, 489 F. Supp. 138, 140 (D. Alaska 1980); *see also Conner v. United States*, 2021 WL 6118708, at *3 (D. Nev. 2021) ("To the extent that Plaintiff alleges her rights under the Fifth . . . Amendment[] have been violated through the imposition of federal income tax, it is well established that such allegations do not give rise to a cognizable constitutional claim.").

The same is true for Kehmeier's takings claim because "[i]t is well established that Congress's general exercise of its taxing power does not violate the Fifth Amendment's prohibition on takings without just compensation." *Quarty v. United States*, 170 F.3d 961, 969 (9th Cir. 1999). Although Kehmeier cites *Tyler v. Hennepin County*, 598 U.S. 631 (2023), (*see* Doc. 22 at 11–12), that case concerned a state's ability to "confiscate more property than was due." *See Tyler*, 598 U.S. at 634, 639. Again, Kehmeier does not argue that his withholding or taxes owed were calculated incorrectly, but that the entire amount was improperly held in violation of the Constitution. For the reasons explained above, Kehmeier has not established that the Government "confiscate[d] more property than was due." *Tyler*, 598 U.S. at 639. Moreover, the income tax Kehmeier challenges here is not "so arbitrary as to constrain to the conclusion that it was not the exertion of taxation, but a confiscation of property" that could give rise to a takings claim. *Quarty*, 170 F.3d at 969 (citation modified). Accordingly, these claims are dismissed.

### C.     Leave to Amend

In his response, Kehmeier requests leave to amend his claims. (Doc. 22 at 15.) Although Rule 15 requires courts to "grant leave to amend freely when justice so requires," leave to amend is not required if "amendment would be futile, when it would cause undue prejudice to the defendant, or when it is sought in bad faith." *Chappel v. Lab'y Corp. of Am.*, 232 F.3d 719, 726 (9th Cir. 2000). Leave to amend will not be granted, both because it would be futile and because Kehmeier has engaged in bad faith by pursuing these meritless claims. Leave to amend would be futile because Kehmeier's only stated entitlement to a refund is that his wages are not taxable income, not that there was a discrepancy in his taxable income or in the taxes withheld by his employer. Accordingly,

his claims are frivolous and Kehmeier has not provided any facts that he could plead to plausibly entitle him to relief.  (*See* Doc. 22 at 15.)  *Lopez v. Smith*, 203 F.3d 1122, 1127 n.8 (9th Cir. 2000) (en banc) ("When a case may be classified as frivolous . . . there is, by definition, no merit to the underlying action and so no reason to grant leave to amend.").

Although pro se litigants ordinarily deserve leniency and the opportunity to amend their complaint at least once before dismissal with prejudice, *see Lopez*, 203 F.3d at 1131, such leniency is not warranted here due to Kehmeier's long history of frivolous litigation and his continuation of that pattern by bringing knowingly frivolous claims in this lawsuit.  As mentioned, this is not Kehmeier's first lawsuit against the Government in which he has challenged the imposition of taxes as unconstitutional.  If common sense or the plain text of the Sixteenth Amendment were not enough, the IRS and Judges in this Court have put Kehmeier on notice that his arguments are frivolous and have been thoroughly rejected.  (*See* Doc. 18 at 24–26 (attaching letter from IRS informing Kehmeier that "information [he] filed as a purported tax return . . . [was] frivolous and there [was] no basis in law for [his] position" and that "[f]ederal courts, including the Supreme Court of the United States, have considered positions like [his] and repeatedly rejected them as without merit").)  *Kehmeier v. United States*, No. 2:10-cv-02684-NVW; *Kehmeier v. United States*, No. 2:13-cv-02257-SRB.  One court did so on penalty of monetary sanctions.  *See Kehmeier v. United States*, No. 2:13-cv-02257-SRB.  Kehmeier should thus "be well aware of his legal obligation to pay taxes on his wages." *Grimes*, 806 F.2d at 1454 (affirming Tax Court's holding that petition was frivolous and awarding damages against petitioner).  "Such prior frivolous actions further counsel against granting leave to amend." *Dmitriy v. Bella*, 2020 WL 1251032, at *3 (E.D. Cal. 2020).

That Kehmeier continues to file frivolous claims against the Government premised on arguments that have been thoroughly rejected by courts is indicative of bad faith and requires consequences.  *See Becraft*, 885 F.2d at 549 (holding that an attorney's "record of advancing wholly meritless claims" demonstrated the "necessity of sending a message . . . that frivolous arguments will no longer be tolerated").  This is due in part to

the reality that "[g]roundless litigation of the kind pursued here by [Kehmeier] diverts the resources of the judicial system from more serious claims, and imposes unnecessary costs on other litigants." *Grimes*, 806 F.2d at 1454. Because monetary sanctions for such conduct have not sufficiently deterred Kehmeier and his conduct demonstrates that he "has no appreciation for the limited nature of the federal judicial resources upon which all aggrieved individuals depend for vindication of statutory and constitutional rights," *Becraft*, 885 F.2d at 549–50, the Court will require him to show cause as to why he should not be declared a vexatious litigant with respect to lawsuits challenging the Government's authority to tax him. *See Ringgold-Lockhart v. County of Los Angeles*, 761 F.3d 1057, 1062 (requiring notice and an opportunity to be heard before imposing pre-filing restrictions).

Accordingly,

**IT IS ORDERED** that the Government's motion to dismiss (Doc. 19) is **granted**. Kehmeier's FAC is dismissed without leave to amend.

**IT IS FURTHER ORDERED** that no later than **October 24, 2025**, Kehmeier shall show cause in writing as to why he should not be declared a vexatious litigant and sanctioned with a pre-filing order that limits the filing of, or requires security be posted to maintain, new cases that relate to the Government's authority to tax him.

Dated this 24th day of September, 2025.

_____
Honorable Sharad H. Desai
United States District Judge